IN RE APPEAL OF A JUVENILE ET AL.

[Cite as In re a Juvenile (1978), 61 Ohio App. 2d 235.]

(Nos. 6-216 & 6-219—Decided February 21, 1978.)

*Mr. John E. Shoop,* prosecuting attorney, for appellee, John E. Shoop.

*Mr. Albert L. Purola,* for appellant, Neil Myers.

COOK, P. J. These are appeals from a judgment of the Court of Common Pleas of Lake County, Juvenile Division, denying attorney Neil Myers the right to defend a juvenile in such court, on a complaint of delinquency, because Mr. Myers is an assistant law director for the city of Euclid, in adjoining Cuyahoga County.

The facts are not in dispute. On October 20, 1977, a complaint was filed against a juvenile in the Court of Common Pleas of Lake County, Juvenile Division, alleging the juvenile was a delinquent child in that he and another person did, "while operating or participating in the operation of motor vehicles, recklessly cause the death of Richard Hartman in violation of Section 2903.06 of the Ohio Revised Code."

The juvenile and his mother, his legal custodian, retained Neil Myers of Euclid, a nearby city in adjoining Cuyahoga County, as his attorney. On October 24, 1977, Mr. Myers filed a motion in the trial court asking that the court allow his continued representation of the juvenile, and further requesting the court to determine if a conflict of interest had arisen by his being retained by the juvenile and his mother in view of the fact that he held the position of assistant law director of the city of Euclid.

The motion was briefed and argued to the trial court with the prosecuting attorney of Lake County opposing appellant's motion to allow representation. Affidavits of the juvenile, his mother and legal custodian, and his natural father, to the effect that they had retained Mr. Myers to represent the juvenile as to the delinquency complaint; that they had been informed that he is an assistant law director of the city of Euclid; and that he represented the city of Euclid in the prosecution of criminal cases from time to time, were presented to the court and considered by it in reaching its decision.

On October 27, 1977, the trial court, in a lengthy judgment entry, found no statutory conflict of interest, but held that Mr. Myers, as a result of representing the juvenile in Lake County Juvenile Court in a delinquency matter against the state of Ohio at the same time he occupied the position of assistant law director of the city of Euclid charged with prosecuting criminal actions in the Euclid Municipal Court, was in violation of P.R. Rules EC 5-14, EC 5-15, EC 9-2, and EC 9-6, which were promulgated by the Supreme Court of Ohio on October 5, 1970, and establish ethical standards for attorneys.

EC 5-14 and 5-15 pertain to the ethical questions involved in representing two clients who may have differing interests and what the lawyer should do if such a situation arises, and EC 9-2 and 9-6 set forth the duty of a lawyer to uphold public confidence in the legal system and the integrity and honor of his profession.

Accordingly, the trial court concluded his judgment entry with the following ruling on appellant's motion.

"Wherefore Attorney Neil Myers is denied the right to represent the juvenile and his family in the within case as

not being in the class of available attorneys and to avoid the appearance of impropriety and to maintain the integrity of the judicial system."

It is from this judgment of the trial court that the juvenile and Mr. Myers have appealed to this court.

Both appellants have filed the same assignment of error, to-wit: "The trial court erred in denying the motion of Attorney Myers to continue his representation of the juvenile and in ordering him removed from the case."

The assignment of error is well taken.

In determining whether an attorney has a conflict of interest in a given case, there are two questions that might be asked.

First, is his appearance on behalf of a client in a particular case a conflict of interest as a matter of law? Second, is his appearance on behalf of a client in a particular case a conflict of interest as a matter of ethical conduct?

Turning our attention first to the question of a possible conflict of interest in the instant case as a matter of law, we must begin with R.C. 4705.01, which states, in part:

"No person shall be permitted to practice as an attorney and counselor at law, or to commence, conduct, or defend any action or proceeding in which he is not a party concerned, either by using or subscribing his own name, or the name of another person, unless he has been admitted to the bar by order of the supreme court in compliance with its prescribed and published rules. *Admission to the bar shall entitle such person to practice before any court or administrative tribunal without further qualification or license.*" (Emphasis added.)

Despite this apparent authority in support of the proposition that a lawyer cannot be prohibited from practicing law in any court in Ohio, several statutes have been enacted by the General Assembly which modify the broad authority seemingly set forth in the first paragraph of R.C. 4705.01.

For example, paragraph three of the same section states:

"No judge of any court of record in this state shall engage in the practice of law during his term of office, either by appearing in court, by acting as advisory or consulting counsel for attorneys or others, by accepting employment or

acting as an attorney, solicitor, collector, or legal advisor for any bank, corporation, or loan or trust company, or by otherwise engaging in the practice of law in this state, in or out of the courts, except as provided in section 1901.11 of the Revised Code."

R.C. 1901.11 in pertinent part states:

"Judges designated as part-time judges by section 1901.08 of the Revised Code shall receive as compensation not less than six thousand, dollars per annum, as the legislative authority prescribes, and such judges *shall be disqualified from the practice of law only as to matters pending or originating in the courts in which they serve during their terms of office.*" (Emphasis added.)

Another limitation on the right of a lawyer to represent any client in any court of Ohio is found in R.C. 120.39 (A), which, as to the appointment of counsel for indigent defendants, states in pertinent part:

"Counsel appointed by the court, co-counsel appointed to assist the state public defender or a county or joint county public defender, and any public defender, county public defender, or joint county defender, or member of their offices, shall not be a partner nor employee of any prosecuting attorney nor of any city solicitor, city attorney, director of law, or similar officer."

The trial court found, and we agree, that the limitation of R.C. 120.39 (A) does not extend to retained counsel, but relates solely to counsel appointed at state expense to provide legal services to indigents.

We are unable to find any other statutory limitations on the right of a person, properly admitted to the practice of law, to practice in any court in Ohio. Apparently, the trial court also found no other statutory limitation as to the right of a duly admitted lawyer to practice law in the courts of Ohio because he based his judgment on a conflict of interest, pursuant to ethical considerations.

Such a conclusion by the trial court leads us to the second question posed earlier in this court's opinion, to-wit: Is the appearance of attorney Neil Myers on behalf of the juvenile in the instant cause a conflict of interest as a matter of ethical conduct?

Ordinarily, at this point a reviewing court would review the conclusions of the trial court as to any unethical conduct on the part of Mr. Myers in the light of those ethical standards relied upon by the trial court. However, we cannot follow this course of action since we are of the opinion that the question of ethical conduct on the part of a lawyer cannot be determined by any court in Ohio except the Supreme Court.

It is true that R.C. 4705.02 appears to confer authority upon the Supreme Court, Court of Appeals or Court of Common Pleas, after a hearing, to "suspend or remove an attorney at law from office or***give [a] private or public reprimand to him as the nature of the offense may warrant, for misconduct or *unprofessional conduct in office* involving moral turpitude" and "[s]uch suspension or removal shall operate as a suspension or removal in all the courts of the state." (Emphasis added.)

However, Section 5 (B), Article IV, of the Ohio Constitution, adopted May 7, 1968, expressly provides:

"The Supreme Court shall prescribe rules governing practice and procedure in all courts of the state * * * . All laws in conflict with such rules shall be of no further force or effect after such rules have taken effect."

Pursuant to the constitutional authority of Section 5 (B), the Supreme Court, in *Smith* v. *Kates,* (1976), 46 Ohio St. 2d 263, 266, a *per curiam* opinion, said:

"In view of the foregoing [Section 5 (B), Article IV, of Ohio Constitution, and Gov. R. V] R.C. 4705.02 is of no force and effect with regard to our jurisdiction over the discipline of attorneys. *Our authority is exclusive and absolute.* A disciplinary proceeding may be initiated only by compliance with Gov. R. V." (Emphasis added.)

Since the Supreme Court of Ohio has exclusive and absolute authority over the disciplining of attorneys, it follows that such court is the only court with the power to determine whether the conduct of an attorney is ethical and, if not, the kind of discipline, if any, which should be imposed.

Here, the trial court relies on Canon 3 (B) (3) of the Code of Judicial Conduct for its authority to rule on ethical standards for lawyers. Canon 3 (B) (3) reads as follows:

"A judge should take or initiate appropriate disciplinary measures against a judge or lawyer for unprofessional conduct of which the judge may become aware."

The decision in the Kates case would dictate the conclusion that Judicial Code 3 (B) (3) prescribes a means of initiating grievances to be decided under the rules of the Supreme Court of Ohio. It is not authority for individual judges, in courts other than the Supreme Court, to enforce ethical standards.

In summary, we can find no statute prohibiting Mr. Myers from representing a juvenile in a delinquency case against the state of Ohio where he acts as retained counsel, and questions as to any possible violations of the Code of Professional Conduct must be determined by the Supreme Court of Ohio and not by a lower court.

*Judgment reversed.*

DAHLING and HOFSTETTER, JJ., concur.